UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE OTWORTH,

                Plaintiff,                Case No. 1:19-cv-621

v.                                                Hon. Paul L. Maloney

TONY MOULATSIOTIS, *et al.*,

                Defendants.
                                            /

**REPORT AND RECOMMENDATION**

        *Pro se* plaintiff Clarence Otworth does not want to pay taxes assessed by the Village of Lakewood Club. To accomplish this goal, he contends that the Village does not exist, is an ongoing criminal organization or criminal enterprise under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, and has engaged in a scheme with others to collect illegal property taxes in violation of RICO. The Sixth Circuit Court of Appeals has rejected this claim, observing that, "Of all the tax avoidance schemes, this case almost certainly involves one of the strangest." *Otworth v. Budnik*, 594 Fed. Appx. 859, 860 (6th Cir. 2014). In the present case, plaintiff re-asserts this theory and has expanded his tax avoidance scheme to include taxes assessed by Dalton Township. This Court recently addressed plaintiff's RICO theory in a report and recommendation filed in *Otworth v. Fifth Third Bank et al.*, 1:19-cv-55 (January 29, 2020) (ECF No. 145) (sometimes referred to as "R&R 145"). The undersigned adopts and incorporates the reasoning and conclusions set forth in R&R 145, and will refer to portions of it throughout this report. **Because plaintiff is not an electronic filer, the Clerk is directed to mail him a copy of R&R 145 with this report**.

The present lawsuit is directed at 11 defendants, some of whom plaintiff has sued in the past: Muskegon County Treasurer Tony Moulatsiotis; the Village of Lakewood Club (sometimes referred to as the "Village); Dalton Township (sometimes referred to as the "Township"); Village Treasurer Lisa Swanson; Township Treasurer Tammy Stephenson; Assistant Township Treasurer Jessica Kidder; Village and Township Assessor Cheryl Moss; Michigan Attorney General Dana Nessel; Assistant Attorney General Samantha Reasner; Michigan Governor Gretchen Whitmer; and Muskegon County. *See* Plaintiff's Amended Complaint for Racketeering ("Amended Complaint").

This matter is now before the Court on 17 dispositive motions.  Defendants have filed five dispositive motions: a Motion to dismiss filed by defendants Moss, Moulatsiotis, and Muskegon County (ECF No. 19); a Motion to dismiss filed by defendants Nessel, Reasner, and Whitmer (ECF No. 29); an Amended Motion to dismiss filed by defendants Township, Kidder, Moss, and Stephenson (ECF No. 30); a Motion to dismiss filed by defendants Village and Swanson (ECF No. 33); and a Motion for summary judgment filed by defendants Township, Kidder, Moss and Stephenson (ECF No. 79).  Plaintiff has filed 12 motions for summary judgment against defendants as follows: Moulatsiotis (ECF No. 37); Nessel (ECF No. 39); Dalton Township (ECF No. 43); Whitmer (ECF No. 44); Kidder (ECF No. 45); Moss (ECF No. 46); Moulatsiotis (second motion) (ECF No. 47); Muskegon County (ECF No. 48); Reasner (ECF No. 49); Swanson (ECF No. 50); Stephenson (ECF No. 51); and, Village of Lakewood Club (ECF No. 52).

**I.     Background**

**A.     Summary of plaintiff's claim**

In his amended complaint, plaintiff alleged that jurisdiction is based on this Court's federal question jurisdiction, 28 U.S.C. § 1331.  Amend. Compl. (ECF No. 15, PageID.58).

2

Federal jurisdiction in this case is based upon plaintiff's allegation that defendants Village and Township are criminal enterprises because the municipalities were not formed properly (in 1967 and 1859, respectively), and that the other defendants have assisted the alleged criminal enterprises by engaging in a scheme to collect illegal property taxes in violation of RICO. As explained in detail in R&R 145, plaintiff cannot challenge the existence of either the Village or the Township, and characterize them as "criminal enterprises," because the municipalities' residents and the State of Michigan have acquiesced in their existence for decades. *Otworth v. Fifth Third Bank et al.*, 1:19-cv-55 (ECF No. 145 at PageID.1244-1248). *See Budnik*, 594 Fed. Appx. at 862; *Stuart v. School District No. 1 of the Village of Kalamazoo*, 30 Mich. 69 (1874).

### B.     Plaintiff's previous federal lawsuits

As discussed in R&R 145, plaintiff has been contesting the authority of the Village for over a decade. *See Otworth v. Village of Lakewood Club*, 59 Fed. Appx. 785 (6th Cir. 2003); *Otworth v. Vanderploeg*, 61 Fed. Appx. 163 (6th Cir. 2003); *Otworth v. Williams, Hughes & Cook, PPLC*, No. 1:11-cv-206, 2011 WL 1542114 (W.D. Mich. April 21, 2011), affirmed No. 11-1589 (6th Cir. Feb. 29, 2012) (unpublished order). *See Otworth v. Fifth Third Bank et al.*, 1:19-cv-55 (ECF No. 145 at PageID.1234-1237).

Courts have rejected plaintiff's RICO and flawed incorporation challenges in the following cases.

### 1.     *Otworth v. Budnik*, 594 Fed. Appx. 859 (6th Cir. 2014)

Plaintiff advanced his RICO claim in *Otworth v. Budnik*, No. 1:13-cv-129 (W.D. Mich.) (Compl.) (ECF No. 1). Plaintiff's complaint in *Budnik* was directed at Wanda Budnik (the Dalton Township Assessor) and others, including present defendant Village Treasurer Lisa Swanson. *Id.* This Court dismissed the complaint.

3

On appeal, the Sixth Circuit summarized plaintiff's claim as follows:

> In his complaint, Clarence Otworth alleges that the Village of Lakewood Club was falsely incorporated in 1967 and has been illegally assessing taxes on his property ever since. By collecting mortgage payments from him, Otworth asserts that Fifth Third Bank has been complicit in this illicit collection scheme.

*Otworth v. Budnik*, 594 Fed. Appx. at 860.

The Sixth Circuit set forth the legal standard applicable to plaintiff's RICO claim:

> In order properly to allege a RICO claim, Otworth must show " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). "A plaintiff must allege each element" in order "to properly state a claim" upon which relief may be granted. *Id.* In addition, a plaintiff must show injury to his or her business or property. *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc).

*Id.* at 861.

The court liberally construed plaintiff's complaint as "a claim for compensatory damages based on the money Otworth was forced to pay towards property taxes levied by the Village." *Id.* That Court summarily rejected plaintiff's RICO claim:

> [I]n order to recover such damages, Otworth must show that either the Village of Lakewood Club or Fifth Third Bank engaged in a pattern of racketeering activity. Under RICO, Otworth must show that the defendants committed one of the predicate acts of racketeering, as identified in 18 U.S.C. § 1961(1)(B). Otworth's complaint is not altogether clear on this point. At various places, he alleges theft, *see* R. 1 (Complaint at ¶ 63) (Page ID # 7); unlawful threat of foreclosure, *see id.* at ¶ 94 (Page ID # 9); mortgage fraud, *see id.* at ¶ 64 (Page ID # 7); unlawful assessment, collection, and receipt of property taxes, *see id.* at ¶ 62, 109–10 (Page ID # 7, 10); and mail fraud, *see id.* at ¶ 155 (Page ID # 14). Of these charges, theft, unlawful threat of foreclosure, and mortgage fraud are not recognized as predicate acts under RICO, and can be dismissed immediately. 18 U.S.C. § 1961(1)(B); *cf. McDonald v. Schencker*, 18 F.3d 491, 495-96 (7th Cir.1994) (noting that conversion is not a per se predicate act under § 1961(1)(B), and ultimately concluding that the offense conduct "does not constitute a predicate act for purposes of RICO.").
>
> Although the unlawful collection of debt is considered a predicate offense, RICO defines "unlawful debt" as a debt "incurred or contracted in gambling

4

activity" or "which is unenforceable under State or Federal law in whole or in part . . . because of the laws relating to usury." 18 U.S.C. § 1961(6). Otworth's complaint comes within neither category. Similarly, although mail fraud is also considered a predicate offense, Otworth's complaint is bare of any factual allegations that would render his legal claim plausible. In paragraph after paragraph, he alleges that the defendants engaged in mail fraud and racketeering, stating, for example, that "Swanson knowingly committed mail fraud every July when she mailed demands for the payment of property taxes to the people who own land in the Village of Lakewood Club." R. 1 (Complaint at ¶ 155) (Page ID # 14). Yet nowhere in his complaint does Otworth assert facts sufficient to turn his claim into a viable one.

Instead, case law indicates that, regardless of any alleged irregularities in Lakewood Club's initial incorporation, Otworth cannot now challenge its existence, because the community's residents and the State of Michigan have acquiesced in its existence for decades. *See, e.g., Stuart v. Sch. Dist. No. 1 of Vill. of Kalamazoo*, 30 Mich. 69, 72-73 (1874) (describing doctrine of acquiescence and noting that "[i]f every municipality must be subject to be called into court at any time to defend its original organization and its franchises at the will of any dissatisfied citizen who may feel disposed to question them, . . . it may very justly be said that few of our municipalities can be entirely certain of the ground they stand upon, and that any single person, however honestly inclined, if disposed to be litigious, or over technical and precise, may have it in his power in many cases to cause infinite trouble, embarrassment, and mischief."). Otworth has never rebutted these points. The district court did not, in sum, err in granting defendants' motion to dismiss.

*Budnik*, 594 Fed. Appx. at 861-62.

### 2.   *In re Otworth*, No. BG 15-01586, 2015 WL 5781512 (Bankr. W.D. Mich. Oct. 2, 2015)

After the Sixth Circuit rejected plaintiff's RICO claim in *Budnik*, plaintiff filed bankruptcy and attempted to use the rejected "false incorporation theory" to avoid arrearages owed on his mortgage and note owed to Fifth Third Bank (a defendant in this case). The bankruptcy court granted Fifth Third Bank's motion to dismiss plaintiff's objection to the claim, citing *Budnik* and stating in pertinent part as follows:

On April 15, 2015, Fifth Third filed a proof of claim in the Debtor's [Clarence M. Otworth's] chapter 13 case, $16,071.87 of which was for prepetition arrearages owed under the note and mortgage. A portion of this arrearage was incurred after Fifth Third established a tax escrow on the mortgage because the

5

> Debtor stopped making payments to two local taxing authorities, the Village of Lakewood Club and Dalton Township.
>
> The Debtor filed a "Motion for Mandatory Injunction" and numerous other pleadings (referred to collectively herein as the "Debtor's Objection to Claim"), objecting to Fifth Third's claim to the extent it represents an attempt to collect the tax liabilities. The Debtor asserts that Fifth Third's imposition of the tax escrow constitutes "collection of an unlawful debt" because the local taxing authorities, the Village of Lakewood Club and Dalton Township, "are unincorporated criminal enterprises masquerading as legitimate government municipalities." (Debtor's Response to Motion to Dismiss, Dkt. No. 126 at 1,3.)
>
> Because the Debtor does not dispute that the tax escrow was properly imposed under the terms of Fifth Third's mortgage, and **because his arguments regarding the alleged flaws in the incorporation of the local taxing authorities have been conclusively rejected in prior litigation**, the court shall grant Fifth Third's dispositive motion and shall overrule the Debtor's Objection to Claim.

*In re Otworth*, 2015 WL 5781512 at *1 (emphasis added).

The bankruptcy court found that plaintiff's claims challenging the Village's incorporation were barred by the doctrine of *res judicata*:

> In this case, all of these requirements [of *res judicata*] have been met, and it is appropriate to give preclusive effect to the findings of fact and conclusions of law in the prior federal judgments. This issue of the propriety of the Village of Lakewood Club's incorporation was raised, litigated and decided by the Sixth Circuit, when it affirmed the district court's dismissal of the Debtor's RICO claim in the prior litigation. The Sixth Circuit held that "regardless of any alleged irregularities in Lakewood Club's initial incorporation" the Debtor could not now "challenge its existence" based on the doctrine of acquiescence. *Otworth v. Budnik*, Case No. 14-1139 at 5 (6th Cir. Nov. 21, 2014) (unpublished opinion) (Dkt. No. 122, Exh. C). This determination was necessary to the Sixth Circuit's holding in the prior litigation and was incorporated into its final order on the merits. Although the litigation was dismissed based on dispositive motions filed and adjudicated before any trial was necessary, the Debtor had a full and fair opportunity to litigate his claims in both the district court and on appeal. The dismissal of the Debtor's challenges to the initial incorporation of the taxing authorities precludes relitigation of those issues in the context of the Debtor's objection to Fifth Third's claim.

*Id.* at *7 (footnote omitted).

The bankruptcy court further explained:

6

> The Sixth Circuit's opinion addressed the Debtor's arguments regarding the incorporation of the Village of Lakewood Club. It is not clear from the record if the court's ruling also applied to the Debtor's assertions about the flaws in Dalton Township's incorporation. Even if the Sixth Circuit opinion did not specifically address Dalton Township, and is not deemed to have preclusive effect regarding those issues, the court finds that the Sixth Circuit's reasoning would apply with equal force to Dalton Township. The parties have asserted in their pleadings that Dalton Township, like the Village of Lakewood Club, is a municipality in the State of Michigan that levies taxes on the Debtor's property. Under the doctrine of acquiescence, the Debtor may not successfully challenge the existence of Dalton Township based on an alleged failure to incorporate or asserted flaws therein.

*Id.* at fn. 11. Ultimately, the bankruptcy court overruled plaintiff's objection and allowed Fifth Third Bank's secured claim in the amount of $60,447.71, which included the disputed arrearages. *Id.* at *7.

**II.  Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)**

**A.  Legal standard**

As discussed, multiple defendants have moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), which provides that a complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, "an unadorned, the - defendant -

7

unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. In this regard, while *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). The Court will address plaintiff's claims against each defendant.

### B. Discussion

### 1. The Village and Township

Plaintiff alleged that the Village's incorporation during the summer of 1967 was flawed and that it does not exist. Amend. Compl. at PageID.60-61. Plaintiff also makes the conclusory allegation that "Defendant Dalton Township is also an unincorporated ongoing criminal organization that is unlawfully pretending to be a Michigan municipality." *Id.* at PageID.61. In R&R 145, the undersigned explained why plaintiff's claims are meritless under both the doctrine of *res judicata* and the general rule that you cannot challenge a municipality's existence after it has operated for decades, stating in pertinent part:

> Plaintiff's claims against the Village are barred by the doctrine of *res judicata*.
>
> > "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171 (2008); *see also* Restatement (Second) of Judgments §87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."). This rule applies regardless of whether the prior federal-court judgment was based on federal question or diversity jurisdiction. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F. 3d 701, 708 (6th Cir. 2015) . . .
> >
> > "The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion." *JZG Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). [Defendant's] motion raises issue preclusion, which "refers to the effect of a judgment in foreclosing

8

> relitigation of a matter that has been litigated and decided." *Rawe* [*v. Liberty Mutual Fire Insurance Co.*, 462 F.3d 521, 528 n.5]. "Issue preclusion. . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892, 128 S. Ct. at 2171 (quotation marks and citation omitted). Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

*Merial, Inc. v. Sergeant's Pet Care Products, Inc.*, No. 1:18-cv-351, 2018 WL 5603536 at *4-5 (W.D. Mich. Oct. 30, 2018) (footnote omitted).

As discussed, the Sixth Circuit rejected plaintiff's RICO claim that the Village does not exist and operates as a criminal enterprise. *See Budnik*, 594 Fed. Appx. 859. Citing *Budnik*, the bankruptcy court rejected plaintiff's "false incorporation" theory as to both the Village and the Township. *See In re Otworth*, 2015 WL 5781512. In reaching its decision in *Budnik*, the Sixth Circuit found that plaintiff could not challenge the Village's existence "because the community's residents and the State of Michigan have acquiesced in its existence for decades." *Budnik*, 594 Fed. Appx. at 862.

Both plaintiff's RICO claim against the Village and his challenge to the Village's existence are barred by issue preclusion because: (1) plaintiff litigated his RICO claim based upon his theory that the Village did not exist and illegally levied taxes in *Budnik*; (2) the determination of the issue was necessary to the outcome in *Budnik*; (3) the prior proceeding in *Budnik* resulted in a final judgment on the merits; and, (4) the party against whom preclusion is sought (plaintiff) had a full and fair opportunity to litigate the issue in the prior proceeding. In this regard, plaintiff sought review by the United States Supreme Court, which denied his petition for certiorari. *See Otworth v. Budnik*, 575 U.S. 989, 135 S. Ct. 1905 (April 27, 2015).

Issue preclusion also bars plaintiff's RICO claim against the Township and his challenge to the Township's existence based upon the bankruptcy court's order which adopted the reasoning in *Budnik*. The bankruptcy court granted Fifth Third Bank's dispositive motion and overruled plaintiff's objection to the bank's claim "because [Otworth's] arguments regarding the alleged flaws in the incorporation of the local taxing authorities [the Village of Lakewood Club and Dalton Township]

9

have been conclusively rejected in prior litigation." *In re Otworth*, 2015 WL 5781512 at *1.

Independent of issue preclusion, plaintiff has failed to state a claim for relief against the Township. Plaintiff contends that the Township does not exist, alleging that Dalton Township has been "pretending to be incorporated since 1867." Plaintiff sets forth no facts to support this conclusory claim. "The township is the basic political subdivision of the county." 24 Mich. Civ. Jur., Townships § 1. The Court takes judicial notice that Dalton Township was organized on April 1, 1859 (Certification of Township, ECF No. 85-1), and that it is recognized as a township in M.C.L. § 4.2001 (listed as one of the Muskegon County Townships included in Michigan representative district 091).

The Sixth Circuit's reasoning in *Budnik* that plaintiff could not challenge the existence of the Village which had been incorporated for "decades" applies with equal force to plaintiff's challenge to the existence of the Township which was organized in 1859.

> [I]n public affairs where the people have organized themselves under color of law into the ordinary municipal bodies, and have gone on year after year raising taxes, making improvements, and exercising their usual franchises, their rights are properly regarded as depending quite as much on the acquiescence as on the regularity of their origin, and no *ex post facto* inquiry can be permitted to undo their corporate existence. Whatever may be the rights of individuals before such general acquiescence, the corporate standing of the community can no longer be open to question.

*People v. Maynard*, 15 Mich. 463, 470 (1867).

> To require a municipal corporation, after so long an acquiescence, to defend, in a merely private suit, the irregularity, not only of its own action, but even of the legislation that permitted such action to be had, could not be justified by the principles of law, much less by those of public policy. . . If every municipality must be subject to be called into court at any time to defend its original organization and its franchises at the will of any dissatisfied citizen who may feel disposed to question them, and subject to dissolution, perhaps, or to be crippled in authority and powers if defects appear, however complete and formal may have been the recognition of its rights and privileges, on the part alike of the state and of its citizens, it may very justly be said that few of our municipalities can be entirely certain of the ground they stand upon, and that any single person, however honestly inclined, if disposed to be litigious, or over technical and precise, may have it in his power in many cases to cause infinite trouble, embarrassment and mischief.

10

> *Stuart*, 30 Mich. at 73.
>
> Furthermore, plaintiff cannot challenge the existence of the Township as part of a collateral attack buried in this private lawsuit seeking to avoid paying Township taxes. *See Connine v. Smith*, 190 Mich. 631, 637, 157 N.W. 450 (1916) (where the complainant sought to enjoin a school district's issuance of bonds, the court rejected the complainant's collateral attack challenging the validity of district's organization because "[i]t comes within the general principle that acts of a municipal corporation may not be resisted by showing the irregularity of its organization").

*Otworth v. Fifth Third Bank et al.*, 1:19-cv-55 (ECF No. 145 at PageID.1243-1247) (footnote omitted). In addition, under the caselaw in this Circuit, a plaintiff cannot sue the Village or the Township under RICO because the municipalities lack the ability to form criminal intent. *Id*. at PageID.1247-1248.

In summary, plaintiff cannot challenge the existence of either the Village or the Township. *See Budnik*, 594 Fed. Appx. at 862; *In re Otworth*, 2015 WL 5781512 at *1, *7; *Stuart*, 30 Mich. at 72-73; *Maynard*, 15 Mich. at 470. Plaintiff cannot claim that these municipalities, which have existed since 1967 and 1859, respectively, are criminal enterprises under RICO. Accordingly, plaintiff's RICO claims against defendants Village of Lakewood Club and Dalton Township and his challenge to the existence of these two municipalities should be dismissed in this case.

### 2. Lisa Swanson

Plaintiff alleged that when Village Treasurer Lisa Swanson mailed him tax bills, she committed various crimes including conspiracy, false billing, premeditated fraud, mail fraud, extortion and racketeering. Amend. Compl. at PageID.63-64. In addition, plaintiff claims that defendant Swanson "won a judgment lien of $3,310.00 against Otworth by having village attorneys Shon Anne Cook and Susan Franklin convince Muskegon County Judge Harold F. Closz that

11

Lakewood Club is incorporated." *Id*. at PageID.64.[1]  Plaintiff also alleged that defendant Swanson embezzled Village funds for improper purposes, such as:

> . . . giving some of the money to village attorney Shon Anne Cook so she could attend a seminar concerning Zoning and Land Use Law, and some of the money to the village Clerk Debra K. France so she could enroll in the Muskegon community College and take a class in basic accounting, and some of the money to the members of Lakewood Club's village Council to use as prize money for their numerous games and contests, free food picnics, fireworks, parades, costumes, and gifts to keep the property tax payers they are swindling - happy.

*Id*.  Plaintiff's RICO claim fails because neither the Village nor the Township are criminal enterprises.  Accordingly, plaintiff's RICO claim against defendant Swanson should be dismissed.  The Court will address plaintiff's state law claims of embezzlement and improperly handling Village funds in § IV, *infra*.

### 3. Tammy Stephenson

Similarly, plaintiff alleged that when Dalton Township Treasurer Tammy Stephenson mailed him tax bills, she committed various crimes including conspiracy, false billing, premeditated fraud, mail fraud, extortion, racketeering and grand larceny.  Amend. Compl. at PageID.64-65.  Plaintiff's RICO claim fails because neither the Village nor the Township are criminal enterprises.  Accordingly, plaintiff's RICO claim against defendant Stephenson should be dismissed.

### 4. Jessica Kidder

Plaintiff alleged that when Assistant Township Treasurer Jessica Kidder mailed him tax bills, she committed various crimes including conspiracy, false billing, premeditated fraud, mail fraud, extortion, racketeering and grand larceny.  Amend. Compl. at PageID.64-65.

---

[1] The Court notes that plaintiff sued Village Attorney Shon Anne Cook in two previous lawsuits, *Otworth v. Fifth Third Bank, et al.*, 1:19-cv-55, and *Otworth v. Williams, Hughes & Cook, PPLC*, No. 1:11-cv-206.

Plaintiff's RICO claim fails because neither the Village nor the Township are criminal enterprises. Accordingly, plaintiff's RICO claim against defendant Kidder should be dismissed.

### 5. Tony Moulatsiotis

Plaintiff alleged that Muskegon County Treasurer Tony Moulatsiotis is an agent and of the criminal enterprises because he conspired with defendant Swanson to collect property Village property taxes and "creating a phony bill of $850.47 to send to Otworth for alleged delinquent Muskegon County property taxes." Amend. Compl. at PageID.62. In doing so, plaintiff alleged that Moulatsiotis committed various crimes including conspiracy, false billing premeditated fraud, mail fraud, extortion, racketeering, and grand larceny. *Id.* Plaintiff's RICO claim fails because neither the Village nor the Township are criminal enterprises. Accordingly, plaintiff's RICO claim against defendant Moulatsiotis should be dismissed.

### 6. Cheryl Moss

Plaintiff alleged that Village and Township Assessor Cheryl Moss "should be charged with racketeering and prosecuted for contributing to the success of the unincorporated ongoing criminal organizations of Lakewood Club and Dalton Township" and that "[w]ithout her assessments there would be no phony property taxes for Lakewood Club and Dalton Township to collect." Amend. Compl. at PageID.65. Plaintiff's RICO claim fails because neither the Village nor the Township are criminal enterprises. Accordingly, plaintiff's RICO claim against defendant Moss should be dismissed.

### 7. Muskegon County

Plaintiff alleged that,

> Defendant Muskegon County is a corrupt government. It doesn't care if an unincorporated organization pretends to be an incorporated municipality and extorts property taxes. It allowed the Muskegon County Board of Supervisors to compulsorily incorporate "Lakewood Club Village" (a.k.a. Village of Lakewood

13

>Club). If the people employed by Muskegon County had any decency they would put the names of Lakewood Club and Dalton Township on a ballot and let the citizen in Muskegon County vote on whether or not Lakewood Club and Dalton Township should be incorporated.

Amend. Compl. at PageID.65. Plaintiff has not alleged any cause of action against Muskegon County by calling it a "corrupt government." Plaintiff's allegation is nothing more that "an unadorned, the - defendant - unlawfully - harmed - me accusation" which is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Accordingly, plaintiff's claim against Muskegon County should be dismissed.

### 8. Governor Whitmer, Attorney General Nessel, and Assistant Attorney General Reasner

Plaintiff alleged that:

>Defendants Governor Whitmer, Attorney General Nessel, and Assistant Attorney General Reasner, should be kicked out of office and prosecuted for racketeering. They know that the criminal enterprises of Lakewood Club and Dalton Township are swindling Otworth, and several thousand other residents in Muskegon County by pretending to be incorporated Michigan municipalities, but they refuse to put them out of business because they would have to also prosecute the attorneys that represents Lakewood Club and Dalton Township.

Amend. Compl. at PageID.65. According to plaintiff, "Michigan, with the exception of the District of Columbia, has more corrupt officials than any other government in America." *Id*. at PageID.66. Plaintiff's RICO claim fails because neither the Village nor the Township are criminal enterprises. Accordingly, plaintiff's RICO claim against defendants Governor Whitmer, Attorney General Nessel, and Assistant Attorney General Reasner should be dismissed.

### III. Plaintiff's motion for summary judgment

Plaintiff has filed 12 motions for summary judgment pursuant to Fed. R. Civ. P. 56 (ECF Nos. 37, 39, 43, 44, 45, 46, 47, 48, 49, 50, 51 and 52).[2] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

---

[2] Defendants Dalton Township, Kidder, Moss, and Stephenson also moved for summary judgment (ECF No. 79). However, it is unnecessary to address this motion because plaintiff's claims against these defendants are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

Plaintiff's motions for summary judgment are nothing more than a request for entry of summary judgment as a matter of law, with an attachment consisting of a 53-paragraph statement of "incontrovertible facts" dated September 3, 2019 and Exhibits A through Q. *See* Motions and Exhibits (PageID.175-208, 213-247, 272-614).[3] Plaintiff provides no legal argument addressing his claims, having failed to file a supporting brief as required by W.D. Mich. LCivR 7.1(a). In this regard, over one month after plaintiff filed his last motion for summary judgment, plaintiff filed a document entitled "Brief in support of plaintiff's motion for summary judgment." *See* Brief (ECF No. 89). Despite the title, this paper is not a brief. Rather, it contains 26 paragraphs of a request for admissions which plaintiff contends have been automatically admitted because defendants "failed to respond to plaintiff's request for admission within forty-five days." *Id*. at PageID.929. Defendants filed "objections" and a motion to quash plaintiff's discovery. There is no proof of service for the requests, some of which include legal conclusions and admit liability.[4] Based on the motion to quash filed on September 12, 2019 (ECF No. 56), plaintiff mailed two sets of requests for admission (containing 17 requests and 9 requests), with one set dated August 14, 2019. While the Court ruled that the objections were procedurally incorrect, the Court quashed plaintiff's discovery because it was premature, and also stayed discovery to allow the Court to address the dispositive motions. *See* Order (ECF No. 103).

Plaintiff's statements of incontrovertible facts, which he verified "to the best of my knowledge, information, and belief," are not sufficient to support a motion for summary judgment.[5] A party's statement made "to the best of my knowledge, information and belief" does

---

[3] The Court notes that while the docket sheet reflects that one of plaintiff's motions only includes Exhibits A through O (ECF No. 37), plaintiff did include Exhibits P and Q (ECF 37-1, PageID.207-208).
[4] For example, paragraph no. 22 states, "True, the property taxes that the Village of Lakewood Club collects from the plaintiff, and from hundreds of others in Dalton Township is unlawful debts, and violations of the Racketeers Influenced and Corrupt Organization Act even without a Pattern of Racketeering Activity." PageID.930.
[5] Plaintiff's unnotarized papers are not affidavits. It appears that plaintiff attempted to verify his statements pursuant to 28 U.S.C. § 1746. To qualify as an unsworn declaration under that statute, a statement must be made in substantially

16

not demonstrate personal knowledge and cannot create genuine issues of fact for purposes of a summary judgment motion. *Kiplinger v. Selene Finance, LP*, No. 1:15-cv-105, 2015 WL 9255564 at *3 (W.D. Mich. Dec. 18, 2015).[6]

These deficiencies aside, by failing to file a supporting brief, plaintiff has avoided addressing his baseless legal claims. Plaintiff's motions for summary judgment fail for the same reasons that defendants prevail on their motions to dismiss. First, plaintiff's RICO claims and challenges to the existence of the Village and Township have been rejected in previous court decisions and are barred by *res judicata*. Second, plaintiff cannot challenge the existence of either the Village or the Township because their residents and the State of Michigan have acquiesced in their existence since 1967 and 1859, respectively. *See Otworth v. Fifth Third Bank, et al.*, 1:19-cv-55 (ECF No. 145 at PageID.1253-1255). Accordingly, plaintiff's motions for summary judgment should be denied.

### IV. State law claims

Plaintiff's amended complaint includes state law claims against Village Treasurer Swanson for embezzlement and mishandling Village funds. The Court could exercise its supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), which provides that "the district court shall have supplemental jurisdiction over all other claims that are

---

the following form "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2). Here, plaintiff's statements did not comply with the statute because he did not verify that the statements were "true and correct." Rather, plaintiff diluted that statutory language by referring to the statements as true "to the best of my knowledge, information, and belief." PageID.543, 560.

[6] *See SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 139 (2d. Cir. 2009) ("the common expression 'to the best of my knowledge' . . . seems to inject a level of uncertainty into just how sure the declarer is of the truth of the asserted fact"); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (holding that the affiant's "statement . . . based upon his 'belief'. . . did not demonstrate the personal knowledge required by Fed. R. Civ. P. 56(e)"); *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (the "personal knowledge requirement [of Rule 56] prevents statements in affidavits that are based, in part, 'upon information and belief' – instead of only knowledge – from raising genuine issues of fact sufficient to defeat summary judgment"); *Dellacava v. Painters Pension Fund of Westchester and Putnam Counties*, 851 F.2d 22, 27 (2d Cir. 1988) (statements in an affidavit made "upon information and belief" have "no probative value and may not be considered in a motion for summary judgment").

so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy."  The dismissal of plaintiff's federal claims against defendants, however, requires the Court to re-examine the issue of supplemental jurisdiction for these state law claims.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Plaintiff's state law claims that Village funds were embezzled or used for inappropriate purposes are inconsistent with his federal claim that the Village does not exist.  The merits of these claims involving Village funds, as well as the issue of whether plaintiff has standing to bring such claims, are matters of state law which should be addressed by the state courts.  Accordingly, plaintiff's remaining state law claims against defendants Swanson should be dismissed without prejudice.

## V.     RECOMMENDATION

For these reasons, I respectfully recommend that the motion to dismiss filed by defendants Moss, Moulatsiotis, and Muskegon County (ECF No. 19), the motion to dismiss filed by defendants Nessel, Reasner, and Whitmer (ECF No. 29), and the amended motion to dismiss filed by defendants Dalton Township, Kidder and Stephenson (ECF No. 30) be **GRANTED**.

I further recommend that the motion to dismiss filed by defendants Village of Lakewood Club and Lisa Swanson (ECF No. 33) be **GRANTED** as to all claims except for the state law claims that defendant Swanson embezzled and mishandled Village funds.

I further recommend that the motion for summary judgment filed by defendants Dalton Township, Kidder, Moss, and Stephenson (ECF No. 79) be **DENIED** without prejudice.

I further recommend that plaintiff's motions for summary judgment (ECF Nos. 37, 39, 43, 44, 45, 46, 47, 48, 49, 50, 51, and 52) be **DENIED**.

I further recommend that plaintiff's state law claims against defendant Swanson be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that this action be **DISMISSED**.

Dated:  February 7, 2020                              /s/ Ray Kent
                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).